533 So.2d 98 (1988)
Christopher E. COBLENTZ
v.
NORTH PETERS PARKING, INC., R. Guerico & Son, Inc., Sentry Insurance Company, John Doe and United States Fidelity and Guaranty Company.
No. 88-CA-0433.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1988.
*99 Randolph C. Slone, Slidell, for plaintiff.
James Ryan, III, Peter S. Title, Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, New Orleans, for defendants.
Before BARRY, CIACCIO and WARD, JJ.
BARRY, Judge.
Christopher Coblentz appeals the dismissal of his suit for damages pursuant to a jury verdict. Coblentz was shot in a parking lot and sued the operator of the lot, North Peters Parking, Inc.; the lot's owners, R. Guerico, Sr. and the Guerico trust (the trust of Roy Guerico, Sr., Roy Guerico, Jr., Randy Guerico and Rami Guerico) whose trustee was James Cunningham; their insurer United States Fidelity and Guaranty; and the alleged night-time attendant John Doe. R. Guerico, Sr. and James Cunningham third partied J. Everett Eaves, Inc. based on Eaves' alleged negligence of failing to have their insurance in force. Coblentz dismissed without prejudice R. Guerico & Sons, Inc. and its insurer, Sentry Insurance Company,[1] defendants in the original petition.
Coblentz's appeal raises five issues: (1) and (2) the defendants had a duty to protect him from criminal activity in the parking lot or to warn him of potential danger from persons attempting to make unauthorized collections in the lot; (3) the defendants failed to warn and correct a known danger which was the cause-in-fact or proximate cause of Coblentz's injury; (4) the defendants failed to guard against known danger(s); (5) he was entitled to damages.

*100 FACTS
On Friday, March 2, 1984 before Mardi Gras, Christopher Coblentz and three friends, Brad Leppo, James Ray and Marvin Lawhorn, had several drinks after work before driving to the French Quarter around 8:00 or 9:00 p.m. Coblentz was a guest passenger in the vehicle. Brad Leppo testified that they were looking for a place to park and drove into the Iberville St. entrance to the parking lot at 200 N. Peters St. As they walked across the lot a black man approached and asked for a $5.00 parking fee. Leppo thought the man was a hustler and the men told him they would pay when they returned.
Leppo testified that Coblentz was walking behind the three men. He said that as they were about to cross the street he turned and saw Coblentz and the black man standing face to face in the parking lot. Leppo said despite the poor lighting he saw the black man shoot Coblentz, then jump in a truck and drive off. The assailant was never found.
Ray and Lawhorn did not testify. Coblentz was shot in the head and could not testify.
Officer Jake Dawson received a call at 9:25 p.m. and arrived at the scene to find Coblentz on the hood of a car bleeding heavily from the head. He testified it was "pretty dark" in the parking lot and the Iberville St. entrance was open.
Donald Ware, who was cleaning a window table in Shananagan's Restaurant across the street, testified Coblentz and a black man were arguing, he saw a flash, and the gunman left in a truck. Ware told his boss about his concern that the victim was Alvin Turner, the day-time attendant of the lot. Ware said that on more than ten occasions he had seen "quite a few people out there" at night collecting money to park. The "attendant" would remove a restraining cable by the driveway and open the lot. He testified that he told Alvin Turner about the activity and also Roy Guerico when he had come to the lot on a Sunday to catch the man. Ware did not remember if Guerico responded before or after the shooting.
Alvin Turner worked for R. Guerico & Sons as a truck driver prior to 1984 and was employed by the company as a truck driver at the time of trial. He opened the lot for Roy Guerico in January, 1984 and was paid with a Guerico company check. The lot was enclosed by a cable running between posts and had two entrances which were closed by placing an additional post in the middle of each driveway. A small sign with the rates was placed on top of a post. Turner said he made a large sign with the rates and put it against the adjacent building. Neither sign specified the lot's hours. Turner said he left work about 5:30 or 6:00 p.m. and Ware corroborated the closing time. When it got dark early he left because he did not want to be there with the day's receipts.
Turner testified that Guerico's warehouse lights were turned off when the produce business closed and there was no light in the lot at the time of the shooting. He stated that when he left in the evening he usually left the Iberville St. entrance open to allow the remaining cars to exit. Ware corroborated that statement. Turner would return to work after 5:00 a.m. to close the Iberville St. entrance and went home for a while and returned to open the lot.
Turner also said the lock on the N. Peters St. entrance was broken once and the cable was down when he arrived for work. Turner used a larger lock and informed Guerico, but he did not call the police. He testified that he knew someone was in the lot at night collecting money and he informed Guerico once or twice about the problem prior to the shooting.
Steven Alley, the Assistant Manager at Victoria Station Restaurant located behind the N. Peters lot, testified that he was working the night of March 2, 1984 and saw Coblentz after the shooting. He said the lot's lighting was poor and two nearby street lights had recently been removed. He did not know the lot had regular hours. He stated the sign with the parking rates did not specify the hours of operation. Prior to the shooting he had seen a person collecting money until about 11:00 p.m. *101 about five times. Alley said the day-time attendant (Turner) did not wear a uniform nor did the man he saw at night. Alley assumed the lot's owner hired someone to work at night during Mardi Gras. He said a customer had complained a few nights before the shooting about having to pay for parking.
Roy Guerico, Jr., President of R. Guerico and Sons, Inc. and Vice President of North Peters Parking, Inc., testified that he was not aware that someone had been illegally collecting for night parking until two months after the shooting when his sister-in-law called him. Guerico said he immediately went to the lot but no one was there. The next day Turner informed him about the night-time collections. Guerico claims that was the only time Turner mentioned the problem. Guerico testified that the only criminal activity he knew about (for two years prior to the shooting) involved his produce business. He said there were no assaults or rapes in the parking lot and operating procedures for the lot were not changed after the shooting.
Raymond Pendleton, a security expert, testified that crime in that area of the lot was higher at night and during Mardi Gras. Pendleton noted that from February 12, 1982 to March 2, 1984 there were 26 calls to the police relating to the entire 200 block of N. Peters St., including eighteen responses at night. He said the parking lot's lighting was poor and the security inadequate. Pendleton stated the parking lot should have been secured when it was not open in order to prevent people from entering, and signs at each entrance were essential.
A neurosurgeon, a speech therapist, a neuropsychologist and a rehabilitation expert testified as to Coblentz's physical and rehabilitative problems. His father, Ronald Coblentz, testified as to his son's difficulties after the shooting. An economist testified as to Coblentz's economic losses.

THE LAW
In order to prevail in Louisiana in a negligence action under our duty-risk analysis, the plaintiff must prove (1) that the defendant owed a duty of care to the plaintiff; (2) that the defendant breached the duty; (3) that the breach was a cause-in-fact of the harm; (4) that the risk and harm encountered by the plaintiff falls within the scope of the protection afforded by the duty breached (proximate cause). Crochet v. Hospital Service District No. 1 of Terrebonne Parish, 476 So.2d 516 (La. App. 1st Cir.1985), writ denied 478 So.2d 1235 (La.1985), citing Dixie Drive It Yourself Systems v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962). The plaintiff must also prove resultant damages. Harris v. Pizza Hut of Louisiana, 455 So.2d 1364 (La.1984).
A business establishment is under a duty to take reasonable care for the safety of its patrons, but is not the insurer of their safety. Phillips v. Equitable Life Assurance Company of the United States, 413 So.2d 696 (La.App. 4th Cir.1982), writ denied 420 So.2d 164 (La.1982).
This duty does not extend to unforeseeable or unanticipated criminal acts by independent third persons. Only when the owner, management or employees of a business have or should have knowledge of a third person's intended injurious conduct that is about to occur and which is within the power of the owner, management or employees to protect against, does the duty arise. Banks v. Hyatt Corp., 722 F.2d 214 (5th Cir.1984); Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981); Davenport v. Nixon, 434 So.2d 1203 (La.App. 1st Cir.1983). When the independent, intentional, tortious or criminal acts of third persons constitute the unreasonable risk, the duty can be discharged by summoning the police at the time the proprietor knows or should reasonably anticipate that the third person poses a probable danger.
(citations omitted) Ballew v. Southland Corporation, 482 So.2d 890, 893 (La.App. 2d Cir.1986). See also Foster v. Colonel Sanders Kentucky Fried Chicken, Inc., 526 So.2d 252 (La.2d Cir.1988).
The jury's findings of fact and determination of causation and negligence *102 are given great deference and cannot be disturbed absent manifest error. Harris v. Pizza Hut, supra; Canter v. Koehring Company, 283 So.2d 716 (La.1973).

ANALYSIS
Coblentz's five specifications argue against the jury's determinations in the steps of its duty-risk analysis.
It is doubtful whether Coblentz and his friends should be considered patrons of the parking lot merely because they parked in the lot. Leppo testified he thought the man who asked for money was a hustler and they did not have to pay to park. Even if the four are deemed to be good faith patrons, the question is what duty, if any, the lot owner/operator would owe under these circumstances.
What constitutes reasonable care is difficult to ascertain. The duty would not usually extend to the unforeseeable or unanticipated criminal acts of an unknown third person. The duty arises only when the owner has knowledge or knowledge can be imputed of a third person's intended criminal conduct and it is within the owner's power to protect. Davenport v. Nixon, supra.
Turner testified that he told Guerico once or twice that someone was collecting money at night. Guerico denied any knowledge of the night-time activity until two months after the shooting. The security expert testified that 26 calls were made to the police in the prior two years pertaining to the 200 block of N. Peters St. We find that information is not sufficient to put the lot owner on notice that someone would commit a criminal act. See Pennington v. Church's Fried Chicken, Inc., 393 So.2d 360 (La.App. 1st Cir.1980).
The jury gave negative responses to the interrogatories that asked whether the defendants were "at fault or the legal cause of the injuries sustained by Coblentz." After reviewing the evidence and the unusual circumstances, this Court cannot conclude that the jury was manifestly erroneous. See Phillips v. Equitable Life Assurance Company of the United States, supra.
The judgment is affirmed.
AFFIRMED.
NOTES
[1] Sentry Insurance company's motion for summary judgment was denied.