647 So.2d 390 (1994)
Mardell E. ROWE, Plaintiff-Appellant,
v.
SCHUMPERT MEDICAL CENTER, Defendant-Appellee.
No. 26,334-CA.
Court of Appeal of Louisiana, Second Circuit.
December 7, 1994.
Writ Denied March 17, 1995.
*391 Blackman & Blackman by Gordon N. Blackman, Shreveport, for appellant.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, for appellee.
Before LINDSAY, VICTORY and BROWN, JJ.
LINDSAY, Judge.
The plaintiff, Mardell E. Rowe, appeals from a trial court judgment denying her claim for damages against Schumpert Medical Center, arising from personal injuries sustained in a purse snatching incident. For the following reasons, we affirm the trial court judgment.

FACTS
The plaintiff, a licensed practical nurse, was working as a private duty nurse at Schumpert. At the time of this incident, she was 73 years of age. At approximately 10:10 p.m. on August 22, 1988, she was arriving for her 11 p.m. to 7 a.m. shift. Prior to entering the hospital, and when she was approximately 6-10 feet from the emergency entrance, *392 she was accosted by a male assailant who knocked her to the ground and jerked her arm until her purse came loose. The assailant fled with the plaintiff's purse. Schumpert's security officers were called to the scene of the attack, but the assailant was never apprehended.
The plaintiff was taken into the emergency room area of the hospital and treated. She suffered a musculoligamentous strain to the left shoulder, including the rotator cuff. After the attack, the plaintiff also experienced extreme emotional difficulties. She was hospitalized twice due to her psychiatric problems and was diagnosed with post traumatic stress disorder. She also developed a respiratory condition partially related to her emotional state. Following the attack, the plaintiff felt she could no longer work and rarely left her home.
On April 10, 1989, the plaintiff filed suit against the defendant, alleging that the hospital was negligent in failing to provide reasonably safe ingress and egress to the hospital and failing to implement reasonable security procedures for the safety of persons on the premises of the hospital. Specifically, she contended that no security guard was posted at the emergency room entrance, the only accessible entrance to the hospital at that time of night, and the hospital had no surveillance cameras monitoring that area.
Trial on the merits was held on September 2, 1993. The parties entered into a number of stipulations. One of the stipulations concerned another purse snatching incident which occurred on the Schumpert premises in 1987. The parties stipulated the testimony of Ms. Corene Stone who would have testified that in the fall of 1987, she also had her purse snatched. The parties also stipulated that the plaintiff's emergency room charges from Schumpert were $177. The parties further stipulated the admissibility of numerous depositions from physicians who treated the plaintiff, as well as hospital records and hospital security records. The parties also stipulated that there was no security guard at the emergency room entrance or driveway at the time the plaintiff was attacked.
The trial court found in favor of the defendant. In reasons for judgment, the court found that, because Schumpert undertook to provide security, the court's inquiry was not whether the hospital breached a duty to provide security, but whether the security measures and procedures implemented were reasonable. A further inquiry was whether Schumpert could have anticipated and could have prevented this incident.
The court stated that there was extensive testimony regarding Schumpert's security procedures. Schumpert employed and trained its own security personnel. Security personnel patrolled the hospital and the parking lots. Also, numerous closed circuit television cameras were positioned throughout the hospital and were monitored at all times by a security guard. A portion of the emergency room driveway was visible from one of the cameras. The court further noted that security personnel were available to escort anyone requesting the service to and from their vehicles. For those arriving at the hospital, they merely had to contact the security personnel and alert them to the time and place of their arrival.
The trial court noted that statistics involving other criminal activity near the hospital, including purse snatching, did not establish "a common thread or similarity sufficient to place Schumpert on notice of a particular pattern of vulnerability which it should have addressed." The trial court concluded that the evidence did not establish that Schumpert's efforts in providing security personnel and surveillance cameras were unreasonable or inadequate.
The court found that this incident was a random, spontaneous and unforeseeable act of violence that could not have been anticipated at this location under these circumstances. The court found that a preponderance of the evidence failed to establish that Schumpert breached any duty owed to the plaintiff. Therefore, the hospital was not liable.
A judgment rejecting the plaintiff's demands was signed and filed on November 16, 1993. The plaintiff appealed the trial court judgment. She argues that the hospital negligently performed its duty to provide adequate *393 security for persons entering and leaving the hospital. She specifically contends that the hospital was negligent in failing to post a security guard and/or a surveillance camera at the emergency room entrance.

LEGAL PRINCIPLES
In order to determine whether liability exists under the facts of a particular case, the duty-risk analysis is applied. Under this analysis, the plaintiff must prove:
(1) The conduct in question was the cause-in-fact of the resulting harm.
(2) defendant owed a duty of care to the plaintiff.
(3) the requisite duty was breached by the defendant.
(4) the risk of harm was within the scope of protection afforded by the duty breached.
Mundy v. Department of Health, 620 So.2d 811 (La.1993); Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984); Rhodes v. Winn-Dixie Louisiana, Inc., 93-1848 (La.App. 1st Cir. 6/24/94), 638 So.2d 1168; Hauck v. Facility Management of Louisiana, Inc., 94-0225 (La.App. 4th Cir. 5/17/94), 637 So.2d 1154; Coblentz v. North Peters Parking, Inc., 533 So.2d 98 (La.App. 4th Cir.1988).
Whether a duty is owed is a question of law. Whether the defendant has breached the duty is a question of fact. Mundy v. Department of Health, supra; Hauck v. Facility Management of Louisiana, Inc., supra; Rhodes v. Winn-Dixie Louisiana, Inc., supra.
In general, the owner or operator of a facility has the burden of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of harm. Mundy v. Department of Health, supra; Harris v. Pizza Hut of Louisiana, Inc., supra; Harrison v. Clark, 607 So.2d 1 (La.App. 2d Cir.1992); Coblentz v. North Peters Parking, Inc., supra; Hardin v. Munchies Food Stores, 510 So.2d 33 (La.App. 2d Cir.1987).
This duty does not extend to unforeseeable or unanticipated criminal acts by third persons. Rhodes v. Winn-Dixie Louisiana, Inc., supra; Coblentz v. North Peters Parking, Inc., supra; Mundy v. Department of Health, supra.
However, when a duty to protect others against such criminal misconduct has been assumed, as in the instant case, liability may be created by a negligent breach of that duty. Mundy v. Department of Health, supra; Dye v. Schwegmann Brothers Giant Supermarkets, Inc., 627 So.2d 688 (La.App. 4th Cir.1993), writ denied 93-3111 (La. 3/11/94), 634 So.2d 401; Harrison v. Clark, supra. The question presented in a case such as this is not whether the defendant had a duty to employ security guards, but since that duty was already assumed, whether the security measures or procedures were reasonable. Mundy v. Department of Health, supra.
Whether violence which results from the breach of such a duty is reasonably foreseeable and a cause in fact of an injury to a third person is a question of fact. Harris v. Pizza Hut of Louisiana, supra. To prevail, the plaintiff must show that the criminal action could have been reasonably anticipated and the defendant could have prevented it. Mundy v. Department of Health, supra. The plaintiff must establish that if a duty is breached, the breach was the cause in fact of the plaintiff's harm. Hebert v. Taco Bell Corporation, 613 So.2d 729 (La.App. 4th Cir. 1993).
A court of appeal may not set aside a finding of fact made by the trial court in the absence of manifest error or unless it is clearly wrong. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review even though the appellate court may feel its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Russell v. McDonald's Corporation, 576 So.2d 1213 (La.App. 5th Cir.1991).

*394 DISCUSSION
In the present case, the trial court found that the defendant's security measures were reasonable and there was no negligent breach of the duty to provide security for hospital patrons. After reviewing the entire record in this case, we find that the trial court's findings were not clearly wrong or manifestly erroneous.
Fred J. Tyson, Jr., who was director of security at Schumpert when this incident occurred, testified regarding the security procedures at the hospital. Mr. Tyson stated that security officers were required to undergo extensive in-house training. He stated that the Schumpert security plan provided that security personnel were to be visible as they moved throughout the hospital complex. In addition, there was extensive use of surveillance cameras, alarms and security inspections.
Five security guards were assigned to each shift to provide security for the hospital. The hospital was divided into three areas which were designated as Area One (1), Area Two (2) and Area Three (3). One guard was assigned to patrol each of the three areas of the hospital. One supervisor was on duty and one guard was assigned to monitor the closed circuit television cameras at all times. On the night of this incident, all five guards were present and were performing their assigned duties.
Mr. Tyson testified that during the evening hours, the main entrance to the hospital and all other entrances to the hospital, except the emergency room entrance, are closed. During the 11:00 p.m. shift change, three entrances are open. The emergency room entrance[1] is always open and during the shift change a rear entrance near the chapel was open, as well as an entrance on the other end of the hospital near Warrington Street. Mr. Tyson testified that security officers are assigned areas of duty and it was his opinion that it was not unreasonable for the hospital not to have a security guard on duty at all times at the emergency room door. In other words, no need was demonstrated for a stationary guard to be posted at the emergency room entrance at all times.
We also note that Mr. Tyson was the only security expert who testified at trial. The plaintiff presented no expert testimony to rebut Mr. Tyson's opinion that the security measures employed were reasonable at this location under these circumstances.
Larry Murray testified that he was the supervisor of security on duty the night of this incident. When the plaintiff was attacked, Mr. Murray was in his office performing his supervisory duties. Another security guard, Robert MacIntosh, was at his post inside the hospital, monitoring the closed circuit television cameras. The other three security officers, Gary Wayne Upchurch, Haskell Frierson, and Anthony Joseph Laberto, were all performing their normal patrol duties when this incident occurred. When the plaintiff was attacked, all patrolling officers and Mr. Murray were alerted and searched the area for the assailant.
Security Officer Upchurch was assigned to patrol Area One (1) of the hospital which does not include the emergency room area. However, after the attack he and the other officers searched the area looking for the assailant.
Officer Frierson was assigned to Area Three (3), which included Schumpert's multi-level parking garage, the visitor's parking lot and a large parking lot south of the hospital. As a part of his regular duties, he relieved the parking garage cashier at approximately 10:00 p.m. for the cashier's fifteen minute break. After relieving the cashier, Mr. Frierson intended to resume his normal routine of patrolling the south parking lot.
Officer Laberto was also on patrol. He was assigned to patrol Area Two (2) of the hospital, which included the emergency room. The emergency room driveway, where the plaintiff was attacked, is a wide, well lighted area under a canopy. Mr. Laberto stated that he was in the area of the emergency room around 10:00 p.m. He did not observe *395 any suspicious persons "hanging around" the emergency room entrance. He testified that everything appeared normal. He exited the emergency room and walked through the lighted driveway toward the south parking lot to patrol that area because he was covering for Mr. Frierson who was temporarily relieving the parking lot cashier.
In discussing their duties, all officers testified that an escort service was available and that, if contacted by hospital patrons, security personnel were available to provide escorts to persons going to and from their vehicles.
Other evidence was presented concerning crime statistics in the area. Records from the Shreveport police department and the hospital showed that there was one other purse snatching in the area of the emergency room entrance in November, 1987, some nine months earlier. The only other criminal activity consisted of car break-ins on the parking lots surrounding the hospital.
Based upon the evidence adduced, the trial court was correct in finding that there was no breach of the duty to provide protection by not having the security guard stationed exclusively at the emergency room entrance. The photographs filed into evidence showed that a guard positioned inside the hospital might not have been visible to the assailant, nor would the guard have been able to see outside and prevent the attack. The evidence also shows that the emergency room driveway is a wide, brightly illuminated, covered area and that a stationary guard would not have been as effective as one patrolling the area.
The measures undertaken to provide security to hospital patrons were reasonable and were not negligently carried out. The hospital utilized patrolling officers rather than stationary guards and the officer assigned to the emergency room area was on duty and had just patrolled the emergency room driveway only minutes before this attack occurred. This incident was a random, unforeseeable act of violence against which the hospital was under no duty to protect.
The jurisprudence dealing with fact situations similar to that in the present case supports the trial court judgment. The case of Harris v. Pizza Hut, supra, explored the liability of a business which assumes the duty of providing security to its patrons. In Harris, one patron was killed and another injured during an armed robbery. The security guard on duty was taking a meal break when the assailants entered the restaurant. Also, when one assailant pointed a weapon at the guard, he moved suddenly provoking gunfire. A security expert testified that the security guard negligently performed his duties. The expert testified that it was inappropriate for the guard to eat on the job and that he also had a book with him that he planned to read during his shift. He was discussing the book with a restaurant employee when the assailants entered the restaurant. Further, the expert testified that the guard behaved inappropriately in moving suddenly when the assailant pointed the shotgun at him. Based upon these facts, the court found that the duty to provide security, a duty which had been assumed by the restaurant, was negligently carried out and therefore the restaurant was liable.
In Hanewinckel v. St. Paul's Property and Liability, 611 So.2d 174 (La.App. 5th Cir. 1992), writ denied 614 So.2d 65 (La.1993), a nurse was attacked in the parking lot at a New Orleans hospital. The court found that the hospital breached its duty to provide security. However, in that case, the assailant who attacked the plaintiff had been on hospital property for several hours, had been observed by numerous persons and his presence had been reported to security personnel. Yet hospital security failed to seek out and find the assailant prior to the attack on the plaintiff. The court found that there were too few security personnel on duty. Further, the security personnel should have discovered the assailant during the hours he was on the property.
The present case is more similar to Mundy v. Department of Health, supra, in which a nurse was attacked on a hospital elevator. The court found that the hospital did not negligently perform its duty to provide security. Security guards were employed by the hospital but were not required to be on every elevator in the hospital.
*396 In Dye v. Schwegmann Brothers Giant Supermarkets, Inc., supra, a store patron was shot and killed in the parking lot of a grocery store in a high crime area. The store provided security personnel who patrolled the parking lot but none were close at hand when this incident occurred. The court found that the defendant did not negligently perform its duty to provide security. The court stated, "Security guards are not policemen. They cannot prevent all harm, nor can they keep all potential criminals away from the premises." The court went on to state that security cannot protect from every crime in every case.
In Russell v. McDonald's Corporation, supra, the plaintiff's purse was snatched outside a restaurant in a high crime area. The restaurant had provided security but had terminated that service shortly before this incident. The court found that this incident was not foreseeable and could not have been anticipated, therefore the restaurant was not liable to the plaintiff.
In Sutter v. Audubon Park Commission, 533 So.2d 1226 (La.App. 4th Cir.1988), five security guards were employed to patrol a 400 acre park. The plaintiff was shot while in a restroom in the park. The court found that there was no negligent performance of the duty to provide security where a guard was not close to the area when the shooting occurred.
As stated above, Schumpert assumed the duty to provide security to hospital patrons. Therefore, the issue is whether the duty to protect against criminal misconduct has been breached in this case. Whether a duty has been breached is a factual question. The trial court's finding of fact in this regard is entitled to great weight and will not be reversed on appeal absent a showing that the trial court was manifestly erroneous or clearly wrong. In this case, the trial court did not err in finding that Schumpert did not breach its duty to provide security.

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court in favor of the defendant, Schumpert Medical Center, rejecting the claims of the plaintiff, Mardell E. Rowe. Costs in this court and in the court below are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] The emergency room entrance actually consists of two separate doors which are several feet apart. These two doors are, for purposes of this opinion, referred to as the emergency room entrance.