661 So.2d 557 (1995)
Cheryl S. WHATLEY, Plaintiff-Appellant,
v.
CADDO PARISH SHERIFF'S DEPARTMENT, Defendant-Appellee.
Laura WHATLEY, Plaintiff-Appellant,
v.
CADDO PARISH SHERIFF'S DEPARTMENT, Defendant-Appellee.
Nos. 27,321-CA, 27,322-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
Rehearing Denied October 26, 1995.
*558 Edmund M. Thomas, Richard J. Voelker, Benjamin P. Mouton, Baton Rouge, for appellants.
Cook, Yancey, King & Galloway by Edwin L. Blewer, Jr., James R. Sterritt, Shreveport, for appellee.
Before NORRIS, LINDSAY and WILLIAMS, JJ.
WILLIAMS, Judge.
In these consolidated wrongful death actions, the plaintiffs, Cheryl S. Whatley and Laura Whatley, appeal a trial court judgment granting summary judgment in favor of the defendant, the Caddo Parish Sheriff's Department.[1] For the following reasons, we *559 reverse the summary judgment and remand for a trial on the merits.

FACTS
On April 5, 1982, the plaintiffs' husbands, Tony G. and Steven Blake Whatley, went jet boating on Caddo Lake. The two men launched their boat from the Earl Williamson Park, a public park on the lake, and parked their vehicle and boat trailer in a parking lot located there. They encountered severe weather conditions. After the two men navigated out to the open lake, their boat stopped and they became stranded about one mile south of the park. Finding themselves in a state of peril, the two men began yelling for assistance.[2]
At approximately 4:30 p.m. that afternoon, Jo Carol Whitfield, a resident of Caddo Lake, heard strong voices coming from the lake. In her deposition, she stated that the voices appeared to be saying the word "Hey." She related that the harsh wind blowing in the trees and the waves hitting the bank were almost deafening. Mrs. Whitfield's mother, four-year-old daughter and father-in-law also heard the voices, but none of them saw anyone or any boats on the lake. The three individuals spent about fifteen minutes unsuccessfully trying to detect the source of the voices. Finally, Mrs. Whitfield called the sheriff's department to report the incident.
Deputy Joe Prest of the Caddo Parish Sheriff's Office, responded to Mrs. Whitfield's call, and he arrived at the Whitfield residence at approximately 5:30 p.m. He and Mrs. Whitfield walked to the shore but did not hear any voices. In his sworn affidavit, Deputy Prest stated that he then proceeded to the park to continue the investigation. There, he scanned the lake with binoculars and questioned several witnesses. He did not find any evidence indicating that people were in danger on the lake, so he ended the investigation and resumed his routine patrol.
Later that evening, after dark, Cheryl Whatley became concerned about her husband because he had not returned from the lake. She drove to the park and found his van and empty boat trailer still parked there. She immediately summoned Laura Whatley, and, at approximately 11:00 p.m., they informed the park ranger, Russell Chisum, that their husbands were missing on Caddo Lake. Mr. Chisum in turn reported the incident to the sheriff's department.
The sheriff's department responded by dispatching several deputies to the scene. The weather conditions had calmed somewhat since earlier that day, and at 1:45 a.m. on April 6, 1982, the sheriff's deputies launched a boat into the water and searched for two and one-half hours. The deputies canceled their search because of the weather and the dangerous condition of the lake. At 8:30 a.m. that same morning, the deputies resumed the search, and at 12:30 p.m. that afternoon, they recovered the body of Tony G. Whatley. Their search continued for several days with the assistance of the state police. On April 11, 1982, the law enforcement officials found the missing boat, and on April 12, 1982, they recovered the body of Blake Whatley.
Cheryl and Laura Whatley filed separate actions against the Caddo Parish Sheriff's Department, seeking monetary damages for the wrongful death of their husbands. These actions were later consolidated. The sheriff's department filed a motion for summary judgment, seeking to have the actions dismissed with prejudice. The trial court granted the motion, finding that the sheriff's department did not breach a legal duty owed to the plaintiffs' deceased spouses. From that judgment, the plaintiffs appeal.

DISCUSSION
The plaintiffs argue that under the facts of this case, the defendant breached a legal duty owed to them. Consequently, they contend that the trial court erred in granting summary judgment in the defendant's favor.
*560 The motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. Rhodes v. Executive Risk Consultants, Inc., 26,021 (La.App.2d Cir.8/17/94), 642 So.2d 269, 272. Under LSA-C.C.P. Art. 966, a trial court can properly grant a motion for summary judgment only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. Rhodes v. Executive Risk Consultants, Inc., supra. When reviewing the granting of a motion for summary judgment, the appellate court must review the record de novo, under the same criteria which governed the trial court's consideration of whether the summary judgment was appropriate. Tugwell v. State Farm Insurance Co., 609 So.2d 195 (La.1992).
The party seeking the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. In determining whether the mover has satisfied his burden of proof, the court shall closely scrutinize the documents supporting the mover's position, while treating the opposing documents indulgently. Bradford v. Louisiana Downs, Inc., 606 So.2d 1370 (La.App.2d Cir.1992). Weighing evidence and making evaluations of credibility are not included in a determination of summary judgment. Mack v. City of Monroe, 595 So.2d 353, 355 (La.App.2d Cir.), writ denied, 599 So.2d 314 (La.1992). The inferences drawn from the underlying facts contained in the summary judgment evidence and materials must be viewed in the light most favorable to the party opposing the motion and in favor of a trial on the merits. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). To satisfy this burden, the moving party must meet a strict standard by showing that the truth is self-evident and that no real doubt exists as to the existence of any genuine issue of fact. Barnett v. Staats, 25,357 (La.App.2d Cir. 1/19/94), 631 So.2d 84. Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Chaney v. National RR Passenger Corp., 583 So.2d 926, 930 (La.App. 1st Cir.1991).
In this case, the plaintiffs have alleged, inter alia, that the defendant negligently conducted its investigation and its search and rescue effort. To determine whether a defendant is liable for negligent conduct, the duty/risk analysis of LSA-C.C. Art. 2315 must be applied. Rowe v. Schumpert Medical Center, 26,334 (La.App.2d Cir. 12/07/94), 647 So.2d 390, 393, writ denied, 95-0075 (La. 03/17/95), 651 So.2d 268; Nichols v. Nichols, 556 So.2d 876, 878 (La.App.2d Cir.), writ not considered, 561 So.2d 92 (La.1990). "Whether a duty is owed is a question of law." Rowe v. Schumpert Medical Center, supra. Whether the defendant breached that duty is a question of fact. Rowe v. Schumpert Medical Center, supra.
The duty/risk analysis involves a four-prong inquiry: (1) cause-in-fact, i.e., whether the defendant's conduct was a substantial factor in bringing about the harm to the plaintiff; (2) whether the defendant owed a duty to the plaintiff; (3) whether the defendant breached the duty; and (4) whether the risk, and harm caused, was within the scope of protection afforded by the duty breached. Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94), 646 So.2d 318. In order for the plaintiff to recover, all four inquiries must be answered affirmatively. Moore v. Esponge, 94-1192 (La.App. 3d Cir. 03/08/95), 651 So.2d 962, 965. Thus, the defendant will be entitled to summary judgment if, without any real doubt, any one inquiry is answered negatively.
The initial inquiry is the scope of the defendant's duty to the plaintiff. Nichols v. Nichols, supra at 878. This inquiry requires an analysis of the circumstances of the particular case. Nichols v. Nichols, supra at 879. As this court stated in Nichols, supra:
While we have no difficulty determining that [a law enforcement agency] does not owe a legal duty to physically respond to every threat which a citizen reports to it, there must be some analysis made of each reported threat depending on the circumstances of the particular case, even though *561 that analysis may consist solely of an instantaneous thought process during which previously known facts are considered. It may be that the result will be a duty to further inquire depending on the particular circumstances and, depending on the circumstances, it may be that there will be a duty to further investigate. Of course, a duty to physically respond may also exist, depending on the circumstances.
Nichols v. Nichols, supra at 878-79.
Like the Nichols case, the defendant's duty here seems to center around the factual knowledge of the deputy with respect to plaintiffs and their deceased husbands. In an affidavit, Deputy Prest stated that after hearing nothing at Mrs. Whitfield's house, he went to the park and questioned several people, scanned the water with binoculars, and then returned to his regular patrol. Although it is undisputed that the decedents' vehicle and empty boat trailer were at the park later that evening, Deputy Prest never mentioned whether or not he saw those items, nor did he expressly state that he did not see any stranded boats on the lake when he was at the park. Additionally, there is no evidence, expert or otherwise, showing that Deputy Prest's conduct was reasonable.
In deposition, Mrs. Whitfield stated that she specifically requested Deputy Prest to check the park for an empty boat trailer so that he could confirm her suspicion that someone was in trouble on the lake. She further characterized Deputy Prest's attitude toward her as doubtful and unconcerned. Thus, an inference can be made that Deputy Prest failed to see what he should have seen or that he simply ignored what he saw. The fact that Deputy Prest stated that he spent forty-five minutes in the park asking people undetermined questions and scanning the water with binoculars does not show, without a real doubt, that his conduct was reasonable. Without additional evidence, it is impossible to determine whether the defendant, via Deputy Prest, owed a further duty to inquire, investigate or physically respond.
Moreover, in an affidavit, Deputy Danny Kent, a participant in the initial search effort, stated that only one of the defendant's two operating boats, a 16' Ouachita boat, was used because the lake was too dangerous for them to use the other smaller boat, a 14' or 15' Skeeter boat. In contrast, Mrs. Whitfield stated during her deposition that by 10:00 p.m., April 5, 1982, the water was very calm, thus indicating that the lake was safe for almost any boat.
Additionally, the issue of causation in this case is not susceptible to being resolved by summary judgment. Without additional evidence, whether an immediate search would have saved the lives of the two Whatley men is open to conjecture. The plaintiffs allege in their petition that witnesses heard voices calling for help as late as 1:00 a.m. and that, according to the coroner's report, their husbands may have lived until 7:00 a.m. on April 6, 1982. However, according to the other evidence presented, no one ever saw the men on the lake, and the last sign that they were alive occurred around 4:45 p.m., before the first deputy had arrived on the scene. Despite that, the questions of whether the men were alive and whether they could have been saved by an earlier search and rescue effort have not been sufficiently resolved to show a lack of causation.
The summary judgment procedure is rarely appropriate in a negligence case where the decision turns on a determination of whether the defendant's conduct constituted a tort, since such a determination almost always involves a factual dispute. Rhodes v. Executive Risk Consultants, Inc., supra at 274. See also Reese v. Tayco Food Store, Inc., 602 So.2d 260 (La.App.2d Cir. 1992); Hakim v. Albritton, 552 So.2d 548 (La.App.2d Cir.1989); Bertrand v. Howard Trucking Company, Inc., 406 So.2d 271 (La. App. 3d Cir.1981), writ denied, 410 So.2d 763 (La.1982); Cosse v. Schwegmann Brothers Giant Supermarkets, 336 So.2d 1074 (La. App. 4th Cir.1976); Continental Casualty v. McClure, 313 So.2d 260 (La.App. 4th Cir. 1975). In a tort case, this procedure should be utilized to dismiss the defendant only when the record is completely devoid of any suggested basis for the defendant's liability. Rhodes v. Executive Risk Consultants, Inc., supra. Without making credibility determinations in this type of case, we resolve disputed factual issues against summary judgment. *562 We therefore conclude that, the issues in the instant case, whether the defendant owed a duty to the plaintiff and their deceased husbands, whether the duty was breached, whether the scope of the duty encompassed the risk of harm, and whether this breach was a cause-in-fact of the victims' death, involve factual questions not susceptible of being resolved by summary judgment.

CONCLUSION
Issues of material fact exist that can not be resolved by summary judgment. Therefore, the trial court erred in granting defendant's motion for summary judgment. The judgment is reversed and the case is remanded for trial. Costs of this appeal are assessed to the Caddo Parish Sheriff's Department to the extent allowed by law.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS and WILLIAMS, JJ., and PRICE and CLARK, JJ. Pro. Tem.
Rehearing denied.
NOTES
[1] Plaintiff, Laura Whatley sued individually and as natural tutrix of her minor child, Ashlee Nichole Whatley. She also named as parties defendants the Caddo Parish Sheriff, Don Hathaway, and the Caddo Parish Police Jury. The police jury was dismissed from the suit on an exception of no cause of action.
[2] A subsequent examination of the boat showed that it became disabled when a ski rope became entangled in the drive shaft between the engine and the propeller.