671 So.2d 1278 (1996)
Linda HARRIS, Plaintiff-Appellant,
v.
Laymon GODWIN, et al., Defendants-Appellees.
No. 28,245-CA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1996.
*1279 Randolph W. Hunter, Baton Rouge, for Appellant.
Fred Schroeder, for Appellees.
Before SEXTON and WILLIAMS, JJ., and CLARK, J. Pro Tem.
WILLIAMS, Judge.
In this wrongful death action, plaintiff, Linda Harris, appeals a summary judgment granted in favor of the defendants, Ouachita Parish Sheriff Laymon Godwin and Deputy Rhonda Fowler. We reverse the trial court's summary judgment and remand the case for further proceedings.

FACTS
On the night of December 6, 1991, Curtis Givens observed Jim Edward Harris, the plaintiff's husband, at Cheniere Lake, Area 1. From a position out on the lake, Givens watched Harris lay on the bank, get up and walk in a circle in the lake, and then fall on the bank. Givens later left the lake and positioned himself approximately thirty to forty feet away from Harris. With the aid of a flashlight, he saw that Harris was lying on the ground with blood running out of his nose. Givens called 911, and Deputy Rhonda Fowler, of the Ouachita Parish Sheriff's Office, was dispatched to the scene.[1] When she arrived, she noticed that Harris seemed asleep, that he was bleeding from the nose, and that he appeared to be intoxicated.[2] Deputy Fowler managed to rouse Harris and ask him if he knew where he was. Harris *1280 replied that he was in his mother's yard. Deputy Fowler then asked Harris if he wanted to see a doctor, and he replied that he wanted to go home.
After the above discussion with Harris, Deputy Fowler talked to other deputies on her police radio and learned that Harris had been arrested the night before, because of an altercation with his wife. Thus, she felt she could not take him to his home. Deputy Fowler transported Harris to his mother's house and left him there, after obtaining the mother's permission. According to the coroner's report, Harris died in the early morning hours of December 7, 1991, of a severe closed head injury.
Subsequent to Harris' death, the plaintiff filed a federal claim pursuant to 42 U.S.C. Sec. 1983 and a wrongful death action pursuant to LSA-C.C. Art. 2315 in the United States District Court for the Western District of Louisiana. She brought identical claims in the proceeding below. The federal district court granted defendants' motion for summary judgment regarding the 42 U.S.C. Sec. 1983 claim and dismissed the wrongful death claim without prejudice.
In the proceeding below, defendants filed a peremptory exception of res judicata and a motion for summary judgment. The trial court granted the res judicata exception regarding the 42 U.S.C. Sec. 1983 claim and granted the motion for summary judgment on the wrongful death claim. The trial court found that Deputy Fowler did not breach a duty owed to Harris. The court further found that the defendants were entitled to immunity pursuant to LSA-R.S. 9:2798.1 and LSA-C.C. Art. 2315. Plaintiff appeals.

DISCUSSION
The plaintiff argues that under the facts of this case, defendant, Deputy Fowler, breached a legal duty owed to her deceased husband, and that the breach caused his death. Further, she argues that Fowler's employer, Sheriff Godwin is vicariously liable for the consequences of Deputy Fowler's breach. She contends the trial court erred in granting summary judgment.
The motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. Rhodes v. Executive Risk Consultants, Inc., 26,021 (La.App.2d Cir. 8/17/94), 642 So.2d 269, 272. A trial court can properly grant a motion for summary judgment only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Rhodes v. Executive Risk Consultants, Inc. supra. When reviewing the granting of a motion for summary judgment, the appellate court should review the record de novo, under the same criteria that governed the trial court's consideration of whether the summary judgment was appropriate. Tugwell v. State Farm insurance Co., 609 So.2d 195, 197 (La.1992); Whatley v. Caddo Parish Sheriff's Dept., 27,321 (La.App.2d Cir. 9/27/95), 661 So.2d 557, 560.
The party seeking the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact. In determining whether the mover has satisfied his burden of proof, the court shall closely scrutinize the documents supporting the mover's position, while treating the opposing documents indulgently. Bradford v. Louisiana Downs, Inc., 606 So.2d 1370 (La.App.2d Cir.1992). Weighing evidence and making evaluations of credibility are not included in a determination of summary judgment. Mack v. City of Monroe, 595 So.2d 353, 355 (La.App.2d Cir.), writ denied, 599 So.2d 314 (La.1992).
The inferences drawn from the underlying facts contained in the summary judgment evidence and materials must be viewed in the light most favorable to the party opposing the motion and in favor of a trial on the merits. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991); Whatley v. Caddo Parish Sheriff's Dept., supra. Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted. Chaney v. National RR Passenger *1281 Corp., 583 So.2d 926, 930 (La.App. 1st Cir.1991).
The plaintiff has alleged that Deputy Fowler negligently conducted her investigation of Harris' circumstances in light of her first response training, and that in the course of assisting Harris, Deputy Fowler developed a one-to-one relationship with him that gave rise to a duty not to cause Harris unnecessary injury.
To determine whether a defendant is liable for negligent conduct, the duty/risk analysis of LSA-C.C. Art. 2315 must be applied. Rowe v. Schumpert Medical Center, 26,334 (La.App.2d Cir. 12/7/94), 647 So.2d 390, writ denied, 95-0075 (La.3/17/95), 651 So.2d 268; Nichols v. Nichols, 556 So.2d 876 (La.App.2d Cir.1990), writ not considered, 561 So.2d 92 (La.1990). The question of a defendant's breach of that duty is one of fact. Rowe v. Schumpert Medical Center, supra.
Four inquiries are included in the duty/ risk analysis: (1) cause-in-fact, i.e., whether the defendant's conduct was a substantial factor in bringing about the harm to the plaintiff; (2) whether the defendant owed a duty to the plaintiff; (3) whether the defendant breached the duty; and (4) whether the risk, and harm caused, was within the scope of protection afforded by the duty breached. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318. In order for the plaintiff to recover, all four inquiries must be answered affirmatively. Moore v. Esponge, 94-1192 (La.App. 3d Cir. 3/8/95), 651 So.2d 962, 965. If, without any real doubt, any one inquiry is answered negatively, the defendant is entitled to summary judgment.
The initial inquiry is the scope of the defendant's duty to the plaintiff, and this inquiry requires an analysis of the circumstances of the particular case. Nichols v. Nichols, supra at 878; Whatley, supra at 560. The duty of a public official and a law enforcement officer is summarized in Kendrick v. City of Lake Charles, 500 So.2d 866, 870 (La.App. 1st Cir.1986) as follows:
"The mere fact that a duty is of a public nature, and benefits the general public, does not require a conclusion that the city cannot be found liable for a breach of that duty.' Stewart v. Schmieder, 386 So.2d 1351, 1358 (La.1980). The duties of members of a city police department relate to its governmental function of maintaining public order. Tezeno v. Maryland Casualty Co., 166 So.2d 351 (La.App. 3d Cir. 1964). When a public official breaches a duty which is owed to the public in general, such breach of duty generally does not result in liability to an individual. However, where a personal or individual relationship (one-to-one relationship) arises between the police officer and an individual, liability may be imposed for breach of a duty owed by the police officer to the individual. Serpas v. Margiotta, 59 So.2d 492 (La.App.Orl.1952). A duty owed to the public in general may be transformed into a duty owed to an individual through closeness in proximity or time. Once the personal or individual relationship has been established, the police officer then becomes obligated to conduct himself in such a way as not to cause the individual unnecessary injury. Tompkins v. Kenner Police Department, 402 So.2d 276 (La.App. 4th Cir. 1981).
The defendant's duty here seems to center around whether Deputy Fowler took Harris into custody, whether she assumed a one-to-one relationship with him, and Deputy Fowler's factual knowledge with respect to the physical condition of the plaintiff's deceased husband. These issues are material to make a determination of whether Deputy Fowler breached a duty to provide the deceased with reasonable medical care and/or to ensure that the deceased was not caused any unnecessary injury. Consequently, there exist factual issues that cannot be resolved in a summary judgment context.
Furthermore, assuming that Deputy Fowler may have had a one-to-one relationship with Harris, there is no testimony, expert or otherwise, to show that in light of her first response training, Deputy Fowler's conduct was reasonable. In a deposition, Deputy Fowler stated that after being dispatched to the scene, she roused Harris, conversed with him, determined that he did not want medical attention, and that he seemed intoxicated. *1282 Although it is undisputed that Harris had a black eye, a facial laceration, and a bloody nose when he died, Deputy Fowler states she only saw the bloody nose. Therefore, there is a genuine issue of material fact as to the actual physical condition of the decedent when Deputy Fowler found him. Considering the physical condition of Harris at his death, the fact that Fowler stated she had no reason to believe anything other than that the deceased was merely intoxicated, does not show, without a real doubt, that her conduct was reasonable.
Additionally, the issue of causation in this case is not susceptible to being resolved by summary judgment. Without additional evidence, the issue of whether emergency medical care would have saved Harris' life is open to conjecture. The plaintiff alleges that with medical treatment, her husband would have lived and regained full capacity. However, there is no evidence in the record to show that Harris would have survived his injuries, or that he would have been completely whole had he survived them.
The summary judgment procedure is rarely appropriate in a negligence case where the decision turns on a determination of whether the defendant's conduct constituted a tort, since such a determination almost always involves a factual dispute. Rhodes v. Executive Risk Consultants, Inc., supra at 274; Whatley v. Caddo Parish Sheriff's Dept., supra at 561. In a tort case, summary judgment should be utilized to dismiss the defendant only when the record is completely lacking any suggested basis for the defendant's liability. Rhodes v. Executive Risk Consultants, Inc. supra. We resolve disputed factual issues against summary judgment without making any credibility determinations. We therefore conclude that the issues in the instant case, whether the defendant owed a duty to plaintiff's deceased husband, whether the duty was breached, whether the scope of the duty encompassed the risk of harm, and whether this breach was a cause-in-fact of Harris' death, involve factual questions not susceptible of being resolved by summary judgment.
We note that, in his oral reasons for judgment given at the summary judgment hearing, the trial judge made statements implicitly finding that the defendants were entitled to immunity based on LSA-R.S. 9:2798.1 and granting summary judgment on this ground. However, we review judgments and not reasons for judgment. Nonetheless, plaintiffs argued this issue before the trial court and and assigned and briefed the issue as a specification of error for our review. In the cases cited by the trial court in its oral reasons, Kniepp v. City of Shreveport, 609 So.2d 1163 (La.App.2d Cir. 1992), and Taylor v. City of Shreveport, 26,820 (La.App.2d Cir.4/7/95), 653 So.2d 232, this court decided that the defendants' entitlement to the defense of immunity, based on the above statute, turned on whether the challenged action involved the permissible exercise of a policy judgment or whether the challenged action was operational. See Taylor, supra at 240 and 241; see Kniepp, supra at 1168. It is well established that the question of whether a duty is policy-making or discretionary, rather than operational, is a question of fact which precludes summary judgment. Jones v. New Orleans Aviation Board, 572 So.2d 1191 (La.App. 4th Cir. 1990); Verdun v. State of Louisiana Through The Department of Health and Human Resources, 559 So.2d 877 (La.App. 4th Cir.1990). Therefore, the trial court erred insofar as it granted summary judgment in favor of the defendants based upon a finding that they enjoyed immunity under LSA-R.S. 9:2798.1.

CONCLUSION
Issues of material fact exist that cannot be resolved by summary judgment. Further, the question of immunity under LSA-R.S. 9:2798.1 cannot be resolved by summary judgment. Therefore, the trial court erred in granting defendants' motion for summary judgment. The judgment is reversed and the case is remanded for further proceedings. Costs of this appeal are assessed to the defendants to the extent allowed by law.
REVERSED AND REMANDED.
NOTES
[1] Deputy Buddy Aulds arrived at the scene in a separate unit and witnessed Deputy Fowler's conversation with Harris. He did not accompany Deputy Fowler to Harris' mother's home.
[2] The coroner's report and pictures entered into evidence show that the deceased also had a blackened left eye, and that he had several abrasions beneath his right eye.