LOLLEY, J.
h Guaranty Bank and Trust Company of Delhi, Delhi, Louisiana (“Guaranty Bank”), appeals a judgment of the Fifth Judicial District Court, Parish of Richland, Louisiana, in favor of Commercial Capital Bank (“Capital Bank”). For the following reasons, we affirm.
Facts
This case stems from the sale of cattle by Mike Sanders and Lana Sanders, husband and wife, on December 10, 2003, at Delhi Livestock Auction, Inc. (“Delhi Livestock”), which is a livestock auction company in Delhi, Louisiana. The parties stipulated to the following facts:
1. Guaranty Bank is a banking corporation, organized and existing under the laws of the State of Louisiana, domiciled in Richland Parish, Louisiana.
2. Capital Bank is a banking corporation, organized and existing under the laws of the State of Louisiana, domiciled in Richland Parish, Louisiana.
3. Mike Sanders is a resident of the full age of majority and domiciled in West Carroll Parish, Louisiana, who has done business under the name of Sanders Livestock.
4. Lana Sanders is a resident of full majority and domiciled in West Carroll Parish, Louisiana.
5. Sanrob Farms, Inc. (“Sanrob”) is a Louisiana corporation domiciled in
*322 West Carroll Parish, Louisiana.[1]
6. Delhi Livestock is a Louisiana corporation domiciled in Richland Parish, Louisiana.
7. On July 30, 2001, Capital Bank made an initial loan (“Loan”) to Sanrob to purchase cattle from various individuals. That Loan was renewed, resulting in a Promissory Note executed by Sanrob dated August 1, 2003, in the amount of $190,027.88. As of December 15, 2003, the balance due on that Note was $193,942.97.
|a8. As security for the Loan, Sanrob executed three Commercial Security Agreements, and a UCC-1F on “farm products, livestock and offspring thereof.”
9. On December 10, 2003, Mike Sanders sold cattle at Delhi Livestock in the name of Sanders Livestock for the net proceeds of $55,575.45, in payment of which Delhi Livestock issued a check payable to Sanders Livestock drawn on its account on Capital Bank (the “Sanders Livestock Check”).
10. On December 10, 2003, cattle were sold at Delhi Livestock in the name of Lana Sanders for the net proceeds of $49,642.91, in payment of which Delhi Livestock issued a check payable jointly to Lana Sanders and Farm Service Agency drawn on its account at Capital Bank (the “Lana Sanders Check”).
11. Mike Sanders maintained a business checking account using the trade name of Sanders Livestock (the “Sanders Livestock Checking Account”) at Guaranty Bank. On December 11, 2003, Mike Sanders deposited the Sanders Livestock Check into the Sanders Livestock Checking Account.
12. Lana Sanders had what is commonly referred to as a “supervised account” at West Carroll Community Bank (the “FSA Account”). Such an account is customarily used by the Farm Service Agency of the United States Department of Agriculture (“FSA”) as a means of disbursing loan proceeds, and no check can be drawn on a supervised account unless a representative of FSA has countersigned and thus authorized the issuance of that check.
13. On December 11, 2003, Lana Sanders and the FSA endorsed the Lana Sanders Check and deposited it into the FSA Account.
14. On December 15, 2003, Lana Sanders issued a check drawn on the FSA Account (and properly countersigned by the FSA) payable to Lana Sanders in the amount of $36,535.00 (the “FSA Check”), which Sanders Livestock endorsed and which was deposited into the Sanders Livestock Account.
|g15. On December 15, 2003, Capital Bank contacted Delhi Livestock and requested that it issue stop payment orders on the Sanders Livestock Check and Lana Sanders Check. Delhi Livestock refused Capital Bank’s request, but agreed to issue the stop payment orders pursuant to a court order.
16. On December 15, 2003, Capital Bank instituted a suit styled “Commercial Capital Bank v. Sanrob Farms, Inc., Michael Sanders, Lana H. Sanders, Mike Sanders, d/b/a Sanders Livestock Company, Delhi Livestock Auction, Inc., and John Doe,” Docket No. 37,691, on the doek- *323 et of the Fifth Judicial District Court, Richland Parish, Louisiana (the “Capital Bank Suit”). Pursuant to the petition, the Court entered an Order on December 15, 2003, ordering that Delhi Livestock stop payment on both the Sanders Livestock Check and the Lana Sanders Check (collectively, the “Delhi Livestock Checks”). In compliance with that Court Order, stop payments were issued and signed by Delhi Livestock and payment was stopped on the Delhi Livestock Checks in accordance with the stop payment orders.
17. Shortly after 8:00 A.M. on December 16, 2003, Guaranty Bank received a telephone call from Capital Bank stating that payment had been stopped on the Sanders Livestock Check, and that it was being returned to Guaranty Bank.
18. Guaranty Bank charged the Sanders Livestock Check back to the Sanders Livestock Checking Account and returned as “drawn on insufficient funds,” a check that Mike Sanders had drawn on the Sanders Livestock Checking Account payable to Red River Livestock in the amount of $51,130.00.
19. On December 17, 2003, Guaranty Bank received a telephone call from West Carroll Community Bank advising that the FSA Check was being returned as drawn on insufficient funds, and in due course the FSA Check was returned to Guaranty Bank for that reason. When the FSA Check was again placed for collection, it was returned because payment on it had been stopped.
20. On December 22, 2003, Capital Bank filed a motion to dissolve the temporary restraining order entered in the Capital Bank Suit as to Lana Sanders and the Lana Sanders Check.
D21. Pursuant to that motion, an order was entered by the Court on December 22, 2003, dissolving the temporary restraining order with respect to the Lana Sanders Check.
22. On December 23, 2003, Capital Bank filed a motion to dissolve the remainder of the temporary restraining order entered in the Capital Bank Suit. Pursuant to that motion, an order was signed by the Court on December 23, 2003, dissolving the remainder of the temporary restraining order.
23. As a result of the foregoing, the Sanders Livestock Checking Account was overdrawn in the amount of $36,405.15. The Checking Account remains overdrawn in that amount.
24. Delhi Livestock issued the following checks (“Replacement Checks”) to replace the Delhi Livestock Checks on which payment had been stopped:
a.Check drawn on Delhi Livestock’s account at Capital Bank, dated December 23, 2003, payable to the order of Sanders Livestock Co. and Red River Livestock, L.L.C., in the amount of $51,130.00.
b. Check drawn on Delhi Livestock’s account at Capital Bank, dated December 23, 2003, payable to the order of Sanders Livestock Co. and Commercial Capital Bank, in the amount of $4,445.45.
c. Check drawn on Delhi Livestock’s account at Capital Bank, dated December 23, 2003, payable to the order of Lana Sanders & Farm Service Agency, in the amount of $49,642.91.
25. Lana Sanders delivered her replacement check to the FSA, but applied it to pay her debt to the FSA *324 rather than to pay the outstanding FSA check issued on the FSA account.
Guaranty Bank filed suit against Capital Bank, Michael Sanders, d/b/a Sanders Livestock and Lana Sanders to recover the shortfall caused when Lana Sanders used her replacement check to pay her FSA debt rather | Bthan to honor the FSA Check she had previously deposited in the Sanders Livestock checking account at Guaranty Bank. Guaranty Bank argued that Capital Bank was responsible for its loss, because Capital Bank set off the series of events that led to Guaranty Bank’s eventual loss of $36,405.15. Guaranty Bank asserted that Capital Bank violated La. R.S. 10:4-403 by instigating a legal proceeding that resulted in a court order to stop payment on the Delhi Livestock checks. After a trial of the matter, the trial court determined that Capital Bank had no way of knowing that Lana Sanders had issued the check for $36,535.00, because that check was written on her FSA account with West Carroll Community Bank and deposited at Guaranty Bank— Capital Bank had no connection to that transaction. The trial court ultimately concluded that the actions of Capital Bank were not the legal cause of Guaranty Bank’s eventual loss. Judgment was entered in favor of Capital Bank and against Guaranty Bank.[2] The appeal by Guaranty Bank ensued.
Discussion
In its sole assignment of error, Guaranty Bank argues that the trial court erred in determining Capital Bank’s duty did not extend to protect Guaranty Bank from its loss incurred as a result of Capital Bank’s actions. Specifically, Guaranty Bank argues that Capital Bank, the drawee bank on the two checks, improperly obtained a court order stopping payment on the Delhi Livestock checks. Guaranty Bank maintains that, as a result, Capital | fiBank owed a duty to exercise reasonable care to protect Guaranty Bank. We disagree.
Considering the circumstances of this case, we agree with the trial court that Capital Bank’s duty to Guaranty Bank did not extend to protect it against a loss that Capital Bank had no knowledge of or any ability to anticipate. When determining the scope of a defendant’s duty to a plaintiff, it is necessary to inquire into and analyze the circumstances of the particular case. See Whatley v. Caddo Parish Sheriff’s Dept., 27,321 (La.App.2d Cir.09/27/95), 661 So.2d 557, writ denied, 1995-2842 (La.02/02/96), 666 So.2d 1097. Here, Capital Bank’s duty to protect Guaranty Bank centers around the connection between Capital Bank and Guaranty Bank and whether Capital Bank had any knowledge of Guaranty Bank’s situation as a result of Capital Bank’s actions.
As the stipulated facts state, Lana Sanders was issued a check by Delhi Livestock, which she deposited into her FSA account at West Carroll Community Bank. She then issued a check from the FSA account in the amount of $36,535.00 (i.e., the FSA Check), depositing that amount into the Sanders Livestock account at Guaranty Bank. When the FSA Check proved to be no good, Guaranty Bank suffered its loss. However, as the record reflects, Capital Bank had no connection with the transactions made by and between Lana Sanders, West Carroll Community Bank, and Guaranty Bank. Thus, the trial court reasonably concluded that the evidence did not show that Capital *325 Bank, which had no knowledge of that specific transaction or |7Guaranty Bank’s loss, was in a position to protect Guaranty Bank from a loss.
Specifically, the trial court weighed the contradictory testimony of representatives of each bank and obviously found the testimony of the Capital Bank representative, Phillip Stafford, more credible. Stafford confirmed that Guaranty Bank never provided written confirmation of the amount of its shortfall; nor did Stafford receive a request to make Guaranty Bank a joint payee on the replacement check from Delhi Livestock. Stafford also testified that he never gave an assurance to Guaranty Bank that it would be made whole.
The trial court’s Reasons for Judgment in this matter were quite detailed and extremely well-reasoned. After conducting a thorough analysis of the facts and their application to Louisiana’s general liability concepts, the trial court ultimately determined that:
[sjince none of the transactions between Lana Sanders, FSA, Guaranty Bank and West Carroll Community Bank were clearly known and understood by Commercial Capital Bank, it cannot be said that it was reasonably foreseeable by [Capital Bank] that Lana Sanders would choose to use her replacement check to pay her debt to FSA and stop payment on the $36,535.00 FSA check held for payment by Guaranty Bank. While it seems that good banking practice would have alerted Commercial Capital Bank that it .... include Guaranty Bank as a joint payee on one or both replacement checks in light of Mr. Richards’ statement to Mr. Stafford about [Guaranty Bank]’s intent to pursue its overdraft claim, this court finds that, in the final analysis, this omission fell outside the ambit of [Capital Bankj’s duty to protect [Guaranty Bank] when Delhi Livestock reissued the $49,642.91 check in the original format.
So considering, the trial court concluded that Capital Bank’s actions were not ultimately the legal cause of Guaranty Bank’s loss. Notably, where two permissible views of the evidence exist, the factfinder’s choice between 1 sthem cannot be manifestly erroneous or clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993). Here, the trial court was reasonable in relying on Stafford’s testimony — even if it did contradict that of the Guaranty Bank representative. We see no error in its determination.
ConClusion
Therefore, for the stated reasons, the judgment in favor of Commercial Capital Bank and against Guaranty Bank and Trust Company of Delhi, Delhi, Louisiana is hereby affirmed. Costs of this appeal are assessed to Guaranty Bank.
AFFIRMED.

. The record reflects that Lana Sanders was the majority stockholder of Sanrob Farms, Inc.

. As to the claims of Guaranty Bank against Mike and Lana Sanders, judgment was entered against the Sanders and in favor of Guaranty Bank. That portion of the judgment is not at issue in this appeal.