752 So.2d 881 (1999)
Rosie Lee WEBB, Plaintiff-Appellant,
v.
SEP, INC., d/b/a Save A Lot, Defendant-Appellee.
No. 31,946-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
Opinion Granting Rehearing September 24, 1999.
*882 James M. Johnson, Pamela Harper, Minden, Counsel for Appellant.
Sharp, Henry, Cerniglia, Colvin & Weaver by James H. Colvin, Jr., Homer, Counsel for Appellee.
Before WILLIAMS, STEWART and KOSTELKA, JJ.
STEWART, J.
Plaintiff, Rosie Lee Webb, appeals a summary judgment dismissing her claim against the defendant, SEP, Inc., d/b/a Save A Lot ("Save-A-Lot"), for damages allegedly sustained when she fell while preparing to exit the premises after shopping. We reverse the trial court's judgment and remand.

FACTS
Rosie Lee Webb ("Ms.Webb"), an 84-year old resident of rural Homer, Louisiana, filed suit against Save-A-Lot and its insurer for damages sustained when she fell in the Save-A-Lot store in Minden, Louisiana. Ms. Webb alleges that she injured her knee, necessitating knee replacement surgery.
The incident at issue occurred on July 9, 1996. Ms. Webb drove to Minden that day to visit her cousin. After leaving her cousin's residence, Ms. Webb drove to the Save-A-Lot store to shop for groceries. When Ms. Webb entered the store, the weather was clear. Although her medical records indicate that Ms. Webb had a history of arthritis in her lower extremities and occasionally used support to ambulate, Ms. Webb stated that she did not have a cane with her the day of the accident. Ms. Webb remained in the Save-A-Lot store for approximately one and one-half to two hours before checking out. While in the checkout line, Ms. Webb noticed that a hard rain was falling and beating against the windows of the store. Ms. Webb recalled that the Save-A-Lot store was busy, that four checkout lines were operating, and that they were all crowded. Ms. Webb was concerned that it was raining in her car because she had left the windows down.
After checking out, packing her groceries, and placing them in her buggy, Ms. Webb stopped at a table in the store on which boxes were kept to get a box to place over her head as a makeshift umbrella. After she grabbed the box, Ms. Webb turned to push the buggy, felt water under her feet, and fell forward onto her right knee and onto the floor, wetting the waistline area of her clothes. Ms. Webb described her fall by stating that she was "fixing to push the buggy" and the "buggy ran out from under" her. Ms. Webb stated that she was about eight to ten feet from the exit when she fell. She recalled that a rug was placed inside the store at the entrance, but that no rug was placed at *883 the exit. She did not see any water on the floor prior to her fall, but noticed water "gushing through" under the electronically controlled doors after her fall.
Marilyn Cooksey and Geri MaGee, both employed by Save-A-Lot as cashiers at the time of Ms. Webb's accident, heard when the accident occurred but did not witness it. Marilyn Cooksey, who had a vague recollection of the incident, recalled hearing a "commotion." She turned, saw Ms. Webb on the floor, and went to her. Although Cooksey was not aware of any water on the floor prior to Ms. Webb's fall, she did see water on the floor when she went to Ms. Webb. She did not notice whether Ms. Webb was wet. Cooksey recalled that it was raining hard and that there were "lots of people" in the checkout line. Cooksey stated that she did not have occasion to look at the floor or the doors while working, and she did not recall the time of the accident, but she thought that it occurred in the evening. Cooksey did not recall seeing any wet floor cones out. She did not know how the water came to be on the floor, but she assumed that it was blown in by the wind and by customers passing through the doors.
Geri MaGee stated in her deposition that she heard a lady holler. When she looked, she saw Ms. Webb on the floor. MaGee did not witness the fall. She went to Ms. Webb and asked if she was hurt. The manager, David Clark, then took charge of the situation. MaGee recalled seeing water on the floor when she went to Ms. Webb's assistance, but she did not recall how much water was there or whether Ms. Webb was wet. MaGee did not see any wet floor cones in place. She recalled one instance in which the wind blew the door open allowing rain to puddle in the store, but she did not recall the date. MaGee also stated that David Clark asked her to complete the accident report. The report states, "Water was coming in through the front door and she went to go out and slipped and fell. Raining real hard and blowing on the ... door." The report further states that Ms. Webb hurt her knee and that she left in an ambulance. The report contains an affirmative response to a question regarding the presence of a foreign substance or wet area on the floor. The report states, "Yeswater blowing in from rain." The time indicated on the report is 4:15 p.m. MaGee stated that this report indicates her opinion of the accident at the time it occurred.
Rickie Gray, a current store manager and a management trainee at the time of the accident, stated that it was raining very hard and that it was stormy on the day of the accident, but that he did not know how long it had been raining before the accident occurred. He explained that a wet floor cone is placed at the store entrance when it is raining to warn customers of the possibility of water blowing through the door and wet floors. Gray stated that he placed a wet floor cone out either early in the morning or when he realized that it was raining and that it was in place prior to Ms. Webb's accident. Gray did not recall the time of the accident, but he believed that it occurred around noon. He stated that he spent most of the morning unloading trucks at the back of the store and stocking groceries and that he was completing this task when the accident occurred. Gray did not witness Ms. Webb's accident, but he was told about it, went to her assistance, and got her a chair. Gray saw water on the floor when he went to Ms. Webb and estimated that it was approximately a cup to a cup and a half in volume. He did not know whether Ms. Webb was wet from her fall, and he stated that he assisted her to a car when she left. Gray explained that managers are required to inspect the store every fifteen to thirty minutes and that he had inspected the front of the store approximately fifteen to thirty minutes prior to accident and found no water present on the floor. He did note that it was raining at the time of his inspection. When asked if he was aware of how the water *884 came to be on the floor, the following exchange took place:
A. Yeah. It was very stormy that day. And I've seen, you know, the door blow open from wind because I been checking it in the last check and I've seen it blow open and water come in on the floor.
Q. And that's how it happened that day?
A. Yes, sir.
Gray explained that there was no mat at the exit door because it seldom happens that a storm is severe enough to blow open the electronically controlled door.
David Clark, a manager at the time of Ms. Webb's accident, stated that he was in the back of the store when the accident occurred. He was called to the front of the store by Marilyn Cooksey, who told him that a lady fell by the door. When Clark got to the front of the store, he saw Ms. Webb on her hands and knees trying to get up with the assistance of some gentlemen. Clark also went to her assistance and helped her into a chair beside the ice machine which was about fifteen to twenty feet from the door. Clark stated that they moved Ms. Webb back a bit. Clark recalled that it had been raining "real hard" about ten to fifteen minutes prior to the accident. He explained that he heard the thunder while working in the dairy area of the store. Clark further described the rain as a "hard storm" and stated that it was pouring down and that the wind was blowing hard enough to possibly pull an umbrella up. He noticed some water, estimated to be a cup in volume, near the door when he assisted Ms. Webb. Clark stated that he prepared the accident report while Ms. Webb sat. He estimated that the accident occurred sometime between noon and 5:00 p.m., and he noted that there were about ten to fifteen people in the front of the store. Clark stated that there were no wet floor cones in place, but that while he did the accident report, Rickie Gray put the wet floor cone out and mopped.
In response to Ms. Webb's suit, Save-A-Lot filed a motion for summary judgment arguing that Ms. Webb would be unable to meet the burden of proving either that she slipped on a hazardous substance or that Save-A-Lot had actual or constructive notice of any hazard on the floor. The trial court granted Save-Lot's motion for summary judgment finding that there was nothing to indicate that Ms. Webb slipped. The trial court referred to Ms. Webb's deposition in which she stated a number of times that the buggy ran out from under her and found that nothing indicated how the presence of water contributed to that occurrence. The trial court also found Ms. Webb's affidavit, which was submitted in response to the motion for summary judgment and stated, in part, that "the rushing water which she alleges entered the building through the fault of the Defendant, SEP, INC., D/B/A SAVE-A-LOT FOOD STORE, caused her to fall and severely injure her right knee." contrary to her deposition testimony. Ms. Webb now appeals.

DISCUSSION
Summary judgments are subject to a de novo review under the same criteria applicable to the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.7/5/94), 639 So.2d 730; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991). A motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Mixon v. Progressive Specialty Co., 29,698 (La.App. 2nd Cir. 6/18/97), 697 So.2d 662.
Where the moving party will not bear the burden of proof at trial on the matter before the court on summary judgment, La. C.C.P. art. 966 requires only that the *885 moving party point out that there is an absence of factual support for one or more of the essential elements to the adverse party's claim, action, or defense. If the nonmoving party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2); Berzas v. OXY USA, Inc., 29,835 (La.App. 2nd Cir. 9/24/97), 699 So.2d 1149.
Further, La. C.C.P. art. 967 provides that when a motion for summary judgment is made and supported as provided above, an adverse party may not rest on his pleadings, but his responses, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be rendered against him. La. C.C.P. art. 967.
Ms. Webb's action for damages arises under La. R.S. 9:2800.6, as amended by Acts 1996, effective May 1, 1996. This statute governs negligence claims brought against a merchant for damages resulting from injuries sustained because of a fall due to a condition existing in or on the merchant's premises. La. R.S. 9:2800.6. The claimant must prove, in addition to all other elements of his cause of action (duty, breach, cause in fact, risk and harm within the scope of duty, and actual damages), each of the requirements enumerated below:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
La. R.S. 9:2800.6(B); White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081.
In its motion for summary judgment, Save-A-Lot argued that Ms. Webb would be unable to prove that a condition on the premises presented an unreasonable risk of harm because she freely admitted in her deposition that she did not slip on any foreign substance. This argument is based upon Ms. Webb's deposition testimony that the "buggy ran out from under" her. The trial court agreed with Save-Lot's argument and concluded that Ms. Webb never stated that she slipped in the water.
We cannot agree with the trial court's conclusion that there is no genuine issue of material fact with regard to the cause of the Ms. Webb's fall. While Ms. Webb does repeatedly state in her deposition that the buggy ran out from under her, she also relates the cause of her fall to the presence of water on the floor, as indicated in this telling excerpt:
Q. And you had turned around to push the buggy and you turned around and you pushed the buggy and when you pushed the buggy, the buggy 
A. Ran out from under me.
Q. Okay.
A. `Cause it was in the water.

Q. And the buggy slipped and that's what caused you to fall, right?
A. I felt like that's what caused me to fall.
(Emphasis added.) In this excerpt, Ms. Webb clearly attributes the buggy's slippage to the presence of the water on the floor and not to the ordinary propensity of a buggy to roll on its wheels. While it may appear reasonable to assume, as did the trial court, that Ms. Webb, an elderly lady, simply fell while pushing her buggy, such an assumption is not appropriate for disposition of this matter on summary judgment. We note that the accident report prepared by Save-A-Lot does not assume that Ms. Webb simply fell while pushing her buggy, but rather indicates the also reasonable assumption that Ms. Webb's fall was due to the presence of *886 water on the floor. Ms. Webb did not recite the words "I slipped and fell" in her deposition. However, nothing in La. R.S. 9:2800.6 requires claimants to describe falls in such formulaic terms. Ms. Webb states in her deposition that water was present on the floor, and she relates the cause of her fall to the presence of the water. Ms. Webb's affidavit, which is not wholly inconsistent with her deposition testimony, likewise relates the cause of her fall to the presence of water on the floor. The deposition testimony excerpted above must be considered along with Ms. Webb's additional testimony that her buggy ran out from under her. The totality of Ms. Webb's deposition, in addition to the undisputed fact that water was present, requires us to find that a genuine issue of material fact exists as to whether Ms. Webb's fall was caused by a condition which presented an unreasonable risk of harm.
Similarly, our review of the record indicates that genuine issues of material fact exists as to whether Save-A-Lot had constructive notice of the presence of the water on the floor prior to the occurrence of Ms. Webb's fall and as to whether Save-A-Lot failed to exercise reasonable care. Proof of constructive notice requires the claimant to prove not only that the condition existed, but that it existed for some period of time before the fall. White v. Wal-Mart Stores, Inc., supra. While this temporal element appears to be an onerous burden for the claimant to meet, our Louisiana Supreme Court noted in White that it is "not an impossible burden." Id. at 1085. The depositions presented raise issues as to the length of time that it had been raining prior to the fall and as to whether any employee had notice that rain was entering the store through the doors. This latter issue is particularly raised in the deposition of Rickie Gray who described the weather as stormy and appeared to relate that during his last check or inspection, he saw the door blow open and water come onto the floor. Similarly, the depositions indicate that Save-A-Lot's employees were aware of the stormy weather. This awareness along with questions regarding the presence or absence of a wet floor cone in the vicinity of the fall and the absence of mats at the exit raises genuine issues of fact as to whether Save-A-Lot exercised reasonable care.
Upholding a summary judgment requires us to find that reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law based on the facts before the trial court. Thus, summary judgment is warranted if the unresolved facts do not present any triable legal issues. Although the question of whether a defendant's conduct constituted negligence is usually inappropriate for disposition by summary judgment, a defendant is entitled to dismissal under this procedure if the record is devoid of any suggested basis to impose liability on the defendant after the plaintiff was granted adequate time to develop its case by discovery. Banks v. State Farm Insurance Company, 30,868 (La.App. 2nd Cir. 8/19/98), 717 So.2d 687, 690-691.
In this instance, we find that the record is not totally devoid of any suggested basis for imposing liability on the defendant, Save-A-Lot. Sufficient issues of fact remain such that reasonable minds might not inevitably conclude that Save-A-Lot is entitled to judgment as a matter of law.

CONCLUSION
For the reasons set forth above, we reverse the judgment of the trial court and remand this matter for further proceedings. Costs are assessed against the defendant, Save-A-Lot.
REVERSED AND REMANDED.
Before BROWN, WILLIAMS, STEWART, PEATROSS, KOSTELKA, JJ.

ON REHEARING
KOSTELKA, J. (On Rehearing)
We have granted a rehearing to reconsider our original opinion which reversed *887 the trial court summary judgment dismissing the claims of Rosie Lee Webb against SEP, Inc., d/b/a Save A Lot ("Save A Lot") and its insurer, American Employers Insurance Company ("American") for damages sustained when she fell while leaving the store.[1] We reverse our earlier judgment and affirm the trial court.

FACTS
On July 6, 1996, then eighty-four year old, heavyset, Rosie Lee Webb entered the Minden, Louisiana, Save A Lot grocery store to do some shopping. As she exited the store one and one-half hours later, a thunderstorm had arisen producing winds and heavy rains. Anxious to get to her car, in which she had left the windows down, Webb stopped to get an empty box to hold over her head as a makeshift umbrella. With her right hand she held the box over her head while she used her left hand to push her cart toward the electronically controlled exit door. As Webb turned to push the buggy, she fell, allegedly injuring her knee which later required knee replacement surgery.
As a result of the fall, Webb instituted suit against Save A Lot and its insurer for damages sustained. Save A Lot and American filed a motion for summary judgment arguing that Webb would be unable to meet her burden of showing either that she slipped on a hazardous substance or that Save A Lot had actual or constructive knowledge of any hazard on the floor. After the trial court granted the motion, Webb appealed.

DISCUSSION
Of course, the legal principles regarding summary judgment are well settled. A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966; Mixon v. Progressive Specialty Co., 29,698 (La. App.2d Cir.06/18/97), 697 So.2d 662. The burden is on the mover to establish that there is an absence of factual support for one or more of the essential elements of the adverse party's claims. If the nonmoving party then fails to produce factual support sufficient to establish that he will be able to satisfy the evidentiary burden at trial, there is no genuine issue of material fact. La. C.C.P. art. 966; Berzas v. OXY USA, Inc., 29,835 (La.App.2d Cir.09/24/97), 699 So.2d 1149.
The opponent cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue. La. C.C.P. art. 967. Although the burden of proof remains the same under the recent amendment to La. C.C.P. art. 966, the summary judgment procedure is now favored to secure the just, speedy, and inexpensive determination of all except certain disallowed actions. Acts 1996, 1st Ex.Sess., No. 9. An appellate court reviews summary judgments de novo under the same criteria that govern the district court's consideration of the appropriateness of summary judgment. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.07/05/94), 639 So.2d 730.
Webb's action for damages arises under La. R.S. 9:2800.6, as amended by Acts 1996, effective May 1, 1996. This statute governs negligence claims brought against a merchant for damages resulting from injuries sustained because of a fall due to a condition existing in or on the merchant's premises. La. R.S. 9:2800.6. The claimant must prove, in addition to all other elements of his cause of action (duty, breach, cause in fact, risk and harm within the scope of duty, and actual damages), each of the requirements enumerated below:

*888 (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
La. R.S. 9:2800.6(B); White v. Wal-Mart Stores, Inc., 97-0393 (La.09/09/97), 699 So.2d 1081.
In granting summary judgment, the trial court determined that the lack of evidence indicating that Webb slipped, how the presence of water contributed to the fall and Webb's continued assertions that the buggy's movement caused the fall eliminated any genuine issue of material fact as to causation. On appeal, this court reversed that decision of the trial court finding that because Webb attributed the buggy's slippage and the fall to the presence of water on the floor, the issue of causation was not appropriately disposed of by summary judgment. We now reconsider.
In her deposition, Webb stated "[T]hat buggy run out from under me. But I had the box in the other hand. The buggy run; that's when I fell." Although she testified that she felt water under her feet and her clothes were wet after she fell, she never stated that she slipped and fell because of the water. In fact, she states that as she grabbed the box, she then turned "[F]ixing to push the buggy.... Ran out from under me.... Cause it was in the water." She again states, "I feel like that buggy caused me to fall." Upon being questioned whether her feet slipped out from under her or the buggy moved, she stated, "Buggy run out and I just had a hard fall." Even despite these statements, when questioned later regarding the mechanics of the fall, Webb stated that she didn't "know what happened then, but I know I fell flat on my knee...." Webb also stated that she often used store buggies for walking support when she shopped.
In an untimely affidavit submitted in opposition to the summary judgment, Webb stated that "the rushing water ... caused her to fall...." The trial court rejected this statement as being inconsistent with her previous deposition testimony and failing to show that Webb slipped on the water.
Applying de novo review to the present case, we now find, as did the trial court, that Save A Lot and American sustained the initial burden of showing that no material fact existed as to causation. Webb's deposition testimony clearly stated on at least three occasions that the loss of control or "running" of the shopping cart, caused her collapse. The plaintiff also testified to her constant need for either a cane or walker for walking support and admitted to using store buggies for that purpose in lieu of her cane. On the day of the accident, Webb did not have her cane with her. She never indicated that she slipped in the water and only once, after prompting by counsel, suggested that the slippage of the buggy in the water caused her to fall. Interestingly, the remainder of her unsolicited responses failed to describe such a situation. Nevertheless, we find that even this evidence fails to raise a genuine issue of material fact as to causation. No movement of the buggy, whether rolling or slipping, could have been initiated without the force of Webb's weight. Indeed, not only did Webb push the buggy, but, apparently, she also required it for support, a use not intended for shopping carts which would create a greater weight force. Thus, despite testimony that water puddled on the floor of the store, based upon the record before us, reasonable minds must inevitably conclude that the force of Webb's weight in pushing and leaning on the device precipitated the buggy's ordinary propensity to roll or move forward and caused the fall.
*889 Furthermore, the untimely affidavit, filed in an attempt to change or re-interpret the conclusions to be drawn from Webb's depositional testimony, fails to show any material facts remaining at issue. Not only did the affidavit suspectly supplement Webb's earlier testimony, but as the trial court noted, suggests facts which are unsupported by the record, i.e., that there existed a rushing water flow sufficient to cause her to fall. Notably, this statement, if accepted as true, would likewise overcome Webb's claim to constructive knowledge on defendant's part because Save A Lot could not have had prior notice of the sudden "rushing water" situation described by Webb. Moreover, even with this second opportunity to more fully explain the facts, Webb's statement remains devoid of any explanation regarding how the water caused the fall, i.e., that she slipped in water.[2] Certainly, had those facts been known to Webb, she would have articulated them either in her deposition or affidavit. With these facts at trial, Webb would be unable to satisfy the evidentiary burden regarding causation.
Accordingly, we find Save A Lot and American entitled to dismissal of the suit against them after having shown this record to be devoid of any suggested basis to impose liability, i.e., no remaining genuine issue of material fact as to the cause of Webb's fall. We, accordingly, reverse our earlier judgment and affirm the summary judgment in favor of Save A Lot and American at Webb's costs.
AFFIRMED.
WILLIAMS, J., dissents for reasons assigned by J. STEWART.
STEWART, J., dissents with reasons.
STEWART, J., dissenting.
I must respectfully dissent from the majority's view that there is no remaining genuine issue of material fact as to the cause of Rosie Lee Webb's fall. In a motion for summary judgment, the initial burden is on the movant to point out an absence of factual support for one or more elements essential to the adverse party's claim. La. C.C.P. art. 966(C)(2). This burden was not met. As discussed in the initial opinion reversing the trial court's grant of summary judgment, the record indicates that genuine issues of material fact exist as to not only the issue of whether Ms. Webb's fall was caused by a condition presenting an unreasonable risk of harm, but also as to the issues of constructive notice and the failure to exercise reasonable care.
The majority focuses on the issue of causation and leaps to the assumption that Ms. Webb's fall was caused by a loss of control of the shopping cart due to the force of her weight in pushing and leaning on the cart combined with the cart's ordinary propensity to roll forward. In reaching this assumption, the majority makes much of Ms. Webb's need for a cane or walker to assist her in ambulating and of her use of shopping carts for that same purpose. However, Ms. Webb's deposition testimony does not indicate that she was using a shopping cart as an ambulatory aid or that she was leaning on it in any way for support at the time of the accident. Ms. Webb's deposition testimony does indicate that her need for regular ambulatory support arose after the accident at issue. As I read Ms. Webb's deposition, her statement that she uses shopping carts for support when in stores was made in reference to her needs and actions after the accident and not at the time of the accident as indicated by the majority.
The majority also focuses on Ms. Webb's supposed failure to articulate how the water found on the floor caused her fall. Ms. Webb, a seemingly unsophisticated elderly woman, described her fall by stating that the "buggy ran out from under" her. From this statement, the majority determines that Ms. Webb lost control of the *890 shopping cart and that her fall cannot be considered a "slip and fall." However, Ms. Webb also related the cause of her fall to the presence of the water on the floor. Common sense leads to the conclusion that the presence of the water on the floor created an unreasonable risk of harm that resulted in Ms. Webb's fall. Ms. Webb did not state, as the majority would seem to require, that she "slipped and fell." However, La. R.S. 9:2800.6(B) does not require such formulaic terms in describing falls as an element of proving the cause of action.
Our summary judgment jurisprudence sets forth the principle that weighing evidence and making credibility determinations have no place in the summary judgment procedure. Harris v. Godwin, 28,245 (La.App. 2nd Cir. 4/8/96), 671 So.2d 1278; Whatley v. Caddo Parish Sheriffs Dept., 27,321 (La.App. 2nd Cir. 9/27/95), 661 So.2d 557, writ denied, 95-2842 (La.2/2/96), 666 So.2d 1097. Also, where affidavits and exhibits present a choice of reasonable inferences, such inferences must be viewed in the light most favorable to the party opposing summary judgment. Tucker v. Northeast Louisiana Tree Service, 27,768 (La.App. 2nd Cir. 12/6/95), 665 So.2d 672, writ denied, 96-0063 (La.3/8/96), 669 So.2d 404; Coleman v. Sheraton Pierremont, 25,452 (La.App. 2nd Cir. 1/19/94), 631 So.2d 50.
Here, it is evident that the majority weighed the evidence and determined that the fall was caused by Ms. Webb's own actions rather then by the presence of the water on the floor. However, the record presents a choice of two reasonable inferences of how the fall occurred, and such inferences must be viewed in the light most favorable to Ms. Webb. The majority's assumption that Ms. Webb's fall was caused by her leaning on the shopping cart for support while pushing it is inappropriate for disposition of this matter on summary judgment. Therefore, I dissent.
NOTES
[1] Rosie Lee Webb v. SEP Inc., d/b/a Save A Lot, 31,946 (La.App.2d Cir.05/05/99), 752 So.2d at 881.
[2] We have previously disposed of the claim regarding the slippage of the buggy in the water. The supplemental affidavit adds nothing to counter that earlier conclusion.