764 So.2d 1094 (2000)
Brenda RICHARDSON on behalf of Coydell BROWN, Plaintiff-Appellant,
v.
LAGNIAPPE HOSPITAL CORPORATION and Dr. James P. Floyd, Defendants-Appellees.
No. 33,378-CA.
Court of Appeal of Louisiana, Second Circuit.
May 15, 2000.
*1096 McKeithen and Johnson by Anita McKeithen and Ginger West Johnson, Shreveport, Counsel for Appellant.
Ward Nelson by Craig R. Nelson, New Orleans, Counsel for Appellee-Lagniappe Hospital Corporation.
Pugh, Pugh, & Pugh by Robert G. Pugh, Jr., Shreveport, Counsel for Appellee-Dr. James P. Floyd.
Before BROWN and GASKINS, JJ., and SAMS Judge Pro Tem.
GASKINS, Judge.
The plaintiff, Coydell Brown, appeals a trial court decision granting summary judgment in a medical malpractice case in favor of the defendants, Dr. James P. Floyd and Lagniappe Hospital Corporation.[1] We affirm the trial court judgment.

FACTS
Coydell Brown, a 46-year-old man with cerebral palsy, was admitted to Lagniappe Hospital Corporation (Lagniappe) in March 1996. Mr. Brown had undergone surgery to repair a broken hip and was placed in Lagniappe for physical therapy. The record shows that the hip fracture was slow to heal. Mr. Brown's orthopedic surgeon, Dr. Albert Dean, ordered that the patient not place weight on the hip for an extended period of time. Dr. Floyd was enlisted to monitor Mr. Brown's general medical condition. According to nurses at the hospital, the patient was placed in a wheelchair for some portions of the day, but this was contributing to the formation of decubitus ulcers, more commonly known as bed sores. Several other physicians, including a plastic surgeon, were consulted regarding the sores. Mr. Brown was placed on a special mattress and was kept in bed a large portion of the time. Brenda Richardson, the plaintiff's sister, complained that her brother was being kept in bed too much and generally complained of the development of the sores as well as the lack of progress in rehabilitation following the hip surgery. The hospital personnel also had difficulty getting Mr. Brown to eat the food provided.
On October 18, 1996, Mr. Brown fell out of bed. It appeared that he was trying to reach his call button during breakfast. The side rails of the bed were not up, in order to facilitate the placement of the food tray. Dr. Floyd was immediately *1097 contacted, but since Mr. Brown had not sustained life threatening injuries in the fall, Dr. Floyd ordered x-rays and stated that he would come to the hospital several hours later. Mr. Brown sustained a cut over his right eyebrow that required stitches, as well as a cut on his chin which was bandaged. Head x-rays failed to reveal any fractures.
After the fall, Ms. Richardson transferred her brother to another facility and on May 20, 1997, convened a medical review panel, claiming that Dr. Floyd and Lagniappe had committed medical malpractice regarding her brother's care. On October 8, 1998, the panel issued its opinion, finding that the evidence did not support the conclusion that Dr. Floyd failed to meet the applicable standard of care, as charged in the complaint. The panel found that Dr. Floyd addressed the problems with Mr. Brown's nutrition, preventive wound care, and wound healing in a timely and ongoing manner. After the fall, the doctor gave orders to the nurses and saw Mr. Brown later that day, treating him appropriately. The panel found that Lagniappe's care involving wound prevention and healing was appropriate. However, the panel found there was a material issue of fact as to where the call bell was immediately prior to the fall. The panel found that this was a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court.
On January 6, 1999, Ms. Richardson, in proper person, filed the present lawsuit on behalf of her brother, naming as defendants Dr. Floyd and Lagniappe, arguing that Dr. Floyd failed to examine and treat Mr. Brown and that he developed decubitus ulcers because of neglect. Ms. Richardson alleged that the patient fell out of bed because the rails were down and the call button was out of reach. According to Ms. Richardson, Mr. Brown suffered a head injury and possibly a stroke as a result of the fall, as well as re-injuring his hip.
On May 6, 1999, a motion for summary judgment was filed on behalf of Dr. Floyd, contending that the plaintiff must have the testimony of experts to establish that the actions of a physician fell below the standard of care. The absence of expert testimony that a physician breached the proper standard of care precludes the imposition of liability. In this case, Dr. Floyd contended that interrogatories were propounded to the plaintiff concerning possible expert testimony, which were not answered. Dr. Floyd urged that without this, the plaintiff failed to show that he could meet the burden of proof required in a medical malpractice action.
On June 3, 1999, Lagniappe filed a motion for summary judgment, arguing that there was no evidence that the hospital breached the standard of care owed to Mr. Brown. The hospital attached the statements of two nurses from Lagniappe and interrogatories propounded to the plaintiff, to establish that there was no genuine issue of fact precluding summary judgment in favor of the hospital.
Judgment was signed on August 27, 1999 and filed on September 1, 1999, granting summary judgment in favor of both Dr. Floyd and Lagniappe. The plaintiff appealed the trial court judgment, arguing that the trial court erred in granting summary judgment in favor of Dr. Floyd, where the plaintiff showed that the burden of proof could be sustained, proving that the doctor's conduct fell below the applicable standard of care and/or that the doctor was negligent. He also argued that the trial court erred in granting summary judgment in favor of Lagniappe Hospital when the plaintiff was not served with Lagniappe's motion.

DR. FLOYD'S MOTION FOR SUMMARY JUDGMENT
Brenda Richardson, on behalf of the plaintiff, asserts that she indicated that she would call expert witnesses to testify in this case to sustain the plaintiff's burden *1098 of proof. The plaintiff's argument that the trial court erred in granting summary judgment in favor of Dr. Floyd is without merit.
Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). A fact is material if its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery. Tucker v. American States Insurance, 31,970 (La. App.2d Cir.9/22/99), 747 So.2d 620.
If the movant for summary judgment will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense; thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
The opponent cannot rest on the mere allegations or denials of his pleadings, but must present evidence which will establish that material facts are still at issue. La. C.C.P. art. 967. Although the burden of proof remains the same under the recent amendment to La. C.C.P. art. 966, the summary judgment procedure is now favored to secure the just, speedy, and inexpensive determination of all except certain disallowed actions. Acts 1996, 1st Ex.Sess., No. 9. An appellate court reviews summary judgments de novo under the same criteria that govern the district court's consideration of the appropriateness of summary judgment. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512 (La.07/05/94), 639 So.2d 730; Webb v. SEP Inc., 31,946 (La.App.2d Cir.5/5/99), 752 So.2d 881.
Regarding the plaintiff's burden of proof in a medical malpractice action, La. R.S. 9:2794(A) provides:
A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., a dentist licensed under R.S. 37:751 et seq., an optometrist licensed under R.S. 37:1041 et seq., or a chiropractic physician licensed under R.S. 37:2801 et seq., the plaintiff shall have the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
In a medical malpractice action, opinions of expert witnesses who are members of the medical profession and who are qualified to testify on the subject are necessary to determine whether or not physicians possessed the requisite degree of knowledge or skill, or failed to exercise *1099 reasonable care and diligence. Venable v. Dr. X, 95-1634 (La.App. 3d Cir.4/3/96), 671 So.2d 1249; Dean v. Ochsner Medical Foundation Hospital and Clinic, 99-466 (La.App. 5th Cir. 11/10/99), 749 So.2d 36; Lee v. Wall, 31,468 (La.App.2d Cir.1/20/99), 726 So.2d 1044. This is especially true where the defendant physician has filed a motion for summary judgment supported with expert opinion evidence that his treatment met the applicable standard of care. Lee v. Wall, supra.
In opposition to Dr. Floyd's motion for summary judgment, the plaintiff filed an affidavit given by Ms. Richardson, stating that the plaintiff intended to call Dr. Mairus McFarland to testify as to the applicable standard of care and that Dr. Floyd failed to meet that standard. Ms. Richardson also gave a deposition stating that Dr. Uno had conducted a CAT scan on Mr. Brown which showed nerve damage caused by a stroke that occurred approximately six months prior to the test. Ms. Richardson also stated that Dr. Osherwitz told her that the screws used in Mr. Brown's hip repair were loose.
In addition, Brenda Richardson answered interrogatories propounded prior to the medical review panel's decision, indicating that she did not know who would be called as medical experts, but merely named several physicians who treated her brother since his release from Lagniappe. However, the record contains no affidavits or depositions by medical experts setting forth the applicable standard of care or indicating that Dr. Floyd breached that standard. Dr. Floyd contends that he propounded interrogatories to the plaintiff on February 19, 1999, requesting specific information as to anyone who had told the plaintiff that the care rendered by Dr. Floyd was below the standard of care of an internist in 1996. According to Dr. Floyd, the plaintiff did not respond to the interrogatories.
La. C.C.P. art. 967 provides that affidavits supporting or opposing summary judgment shall be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. Pugh v. Beach, 31,361 (La.App.2d Cir.12/11/98), 722 So.2d 442; Gardner v. Louisiana State University Medical Center in Shreveport, 29,946 (La.App.2d Cir.10/29/97), 702 So.2d 53. Personal knowledge means something which the witness actually saw or heard as distinguished from something he learned from some other person or source. Gardner v. Louisiana State University Medical Center in Shreveport, supra.
An opposition to a motion for summary judgment asserting that the plaintiff has located an expert who will testify that the defendant physician breached the applicable standard of care is not an affidavit based on personal knowledge setting forth facts admissible in evidence as contemplated by La. C.C.P. art. 967. Answering an interrogatory listing the name of an expert who will testify in support of the plaintiff's allegations, without an affidavit or deposition of the expert witness, is not sufficient to oppose a motion for summary judgment.[2] In such a situation, the plaintiff rests merely on the allegations in the pleadings which were not sufficient to create a genuine issue of material fact. See and compare Venable v. Dr. X, supra.
In this case, Ms. Richardson's affidavit that Dr. McFarland would testify on behalf of the plaintiff and the content of that *1100 testimony is not based on personal knowledge. Further, the medical information conveyed in Ms. Richardson's deposition is hearsay. Finally, the plaintiff's answers to Dr. Floyd's interrogatories in October 1997 provide neither the names of witnesses who would testify in support of his claim nor the content of that testimony. The plaintiff was required to produce expert testimony indicating that Dr. Floyd breached the standard of care, an essential element of the plaintiff's burden of proof under La. R.S. 9:2794(A). In the absence of such expert testimony, the plaintiff has not presented factual support sufficient to establish that a genuine issue for trial exists regarding the defendant's alleged breach of the standard of care. Pugh v. Beach, supra.
The plaintiff also argues that Dr. Floyd's negligence in this case is obvious and does not require expert medical testimony. An expert witness is not required when there is some obvious act from which a lay person can infer negligence, such as fracturing a leg during an examination, amputating the wrong limb, dropping a knife, scalpel, or acid on the patient, or leaving a sponge in a patient's body. Dean v. Ochsner Medical Foundation Hospital and Clinic, supra. Failure to attend a patient when the circumstances demonstrate the serious consequences of this failure, and failure of an on-call physician to respond to an emergency when he knows or should know that his presence is necessary are also examples of obvious negligence which do not require expert testimony to demonstrate the physician's fault. Alex v. Dr. X, 96-1196 (La.App. 3d Cir.3/5/97), 692 So.2d 499.
The plaintiff in this case has failed to show that obvious acts of negligence are present. Dr. Floyd pointed out that there is an absence of factual support for the plaintiffs claim of medical malpractice. The plaintiff then failed to produce factual support sufficient to establish that the evidentiary burden of proof at trial will be satisfied at trial. See and compare Lee v. Wall, supra. Accordingly, there is no genuine issue of material fact in this case, and the trial court did not err in granting summary judgment in Dr. Floyd's favor.

LAGNIAPPE'S MOTION FOR SUMMARY JUDGMENT
The plaintiff argues that the motion for summary judgment in favor of Lagniappe should be annulled because there was no service of the motion. This argument is without merit.
The plaintiff alleges that Lagniappe's motion for summary judgment was filed on June 8, 1999 and a sheriff's return on June 21, 1999 indicates that the motion was not served due to a "fenced yard and bad dogs." The plaintiff lives with Ms. Richardson, when he is not hospitalized, and service was attempted at her home. According to the plaintiff, when the defendants' counsel contacted Ms. Richardson and inquired whether she had been served with the motion for summary judgment, she responded affirmatively, thinking the attorney was referring to the motion for summary judgment by Dr. Floyd. The plaintiff argues that a final judgment should be annulled if it is rendered against a party who was not served with process as required by law and who has not waived objection to jurisdiction or against whom a valid judgment by default has not been taken.
The record simply fails to support the plaintiff's argument that service of Lagniappe's motion for summary judgment was not made. The motion was filed June 3, 1999. The minutes show that the motion was called for argument on June 28, 1999 and the court ordered the matter continued to be reset. Apparently at that point, the plaintiff had not been served with the motion. On July 16, 1999, the trial court filed an order stating that the matter came before the court on a motion for summary judgment, and was continued *1101 to be reset by agreement or by further order of the court.[3]
The record then clearly shows that domiciliary service of Lagniappe's motion for summary judgment was made upon Ms. Richardson on July 21, 1999. The matter was reset for August 23, 1999 and was heard by the trial court on that date. Therefore, the record shows that Lagniappe's motion was served on the plaintiff at least ten days before the hearing, as required by La. C.C.P. art. 966(B). Further, service of process was properly made by domiciliary service under La. C.C.P. arts. 1314 and 1234. Therefore, the plaintiff's argument that there was no service of Lagniappe's motion for summary judgment is not supported by the record. Accordingly, the trial court ruling granting summary judgment in favor of Lagniappe cannot be annulled on the grounds of improper service of process.
We also note that, even though the plaintiff was properly served with Lagniappe's motion for summary judgment, the motion was not opposed on the merits. Also, the plaintiff has not produced any factual support or expert testimony sufficient to establish that the evidentiary burden of proof at trial can be sustained. Therefore any argument that might be raised as to the propriety of the trial court's ruling granting summary judgment in favor of Lagniappe has been waived.[4]

CONCLUSION
For the reasons stated above, we affirm the ruling of the trial court, granting summary judgment in favor of the defendants, Dr. James P. Floyd and Lagniappe Hospital Corporation. Costs in this court are assessed to the plaintiff.
AFFIRMED.
NOTES
[1] This suit was originally filed by the plaintiff's sister, Brenda Richardson, on Mr. Brown's behalf. Mr. Brown is severely mentally retarded. In an amended petition, it is urged that the suit caption should be amended to "Coydell Brown v. Lagniappe Hospital Corporation and Dr. James P. Floyd." However, the record shows that Ms. Richardson has, in fact, continued to prosecute this matter on her brother's behalf.
[2] We are cognizant of Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226, holding that La. C.C.P. art. 967 does not prohibit the consideration of expert opinion evidence, in the form of either affidavits or depositions, by the trial judge in deciding a motion for summary judgment. The court held that, assuming that no credibility determination is at issue, the trial judge must consider this evidence if he or she determines that such evidence would be admissible at trial.
[3] The order erroneously specifies that the motion for summary judgment was not served on the defendant.
[4] It should be noted that on November 18, 1999, after Ms. Richardson filed a motion for appeal in this case in proper person, but before the filing of a brief, the plaintiff's attorneys filed a motion in this court to withdraw. The motion was not accompanied by a motion to enroll other counsel on behalf of the plaintiff, who is indigent. On December 10, 1999, this court denied the motion to withdraw and granted an extension of time for plaintiff's counsel to file a brief.